WMP/JPL/LRT:JPM/JPL/DP
F. #2012R01716

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against –

OCH-ZIFF CAPITAL MANAGEMENT
GROUP LLC,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DEFERRED PROSECUTION AGREEMENT

Cr. No. 16-516 (NGG)

Defendant Och-Ziff Capital Management Group LLC ("Och-Ziff" or the "Company"),

pursuant to authority granted by the Company's Board of Directors, and the United States

Department of Justice, Criminal Division, Fraud Section, and the United States Attorney's Office

for the Eastern District of New York (collectively, the "Offices"), enter into this deferred

prosecution agreement (the "Agreement").

<u>CRIMINAL INFORMATION AND ACCEPTANCE OF RESPONSIBILITY</u>

1.     The Company acknowledges and agrees that the Offices will file the attached

four-count criminal Information in the United States District Court for the Eastern District of

New York charging the Company with two counts of conspiracy to commit offenses against the

United States in violation of Title 18, United States Code, Section 371, that is, to violate the anti-

bribery provisions of the Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15,

United States Code, Section 78dd-1, one count of violating the books and records provisions of

the FCPA, in violation of Title 15, United States Code, Sections 78m(b)(2)(A), (b)(4), (b)(5), and

78ff(a), and one count of violating the internal controls provision of the FCPA, in violation of



COURT'S
EXHIBIT NO. 2
IDENTIFICATION/EVIDENCE
DKT.#
DATE: 09/29/2016
PENGAD 800-631-6989

Title 15, United States Code, Sections 78m(b)(2)(B), (b)(4), (b)(5) and 78ff(a).  In so doing, the Company: (a) knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts, which is attached to this Agreement as Attachment A ("Statement of Facts"), and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of New York. The Offices agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.    The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate.  Should the Offices pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding.

## TERM OF THE AGREEMENT

3.    This Agreement is effective for a period beginning on the date on which the Information is filed and ending three (3) years from the later of the date on which the Information is filed or the date on which the independent compliance monitor (the "Monitor") is

retained by the Company, as described in Paragraphs 11 through 13 below (the "Term"). The Company agrees, however, that, in the event the Offices determine in their sole discretion, that the Company has knowingly violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the Offices, in their sole discretion, for up to a total additional time period of one year, without prejudice to the Offices' right to proceed as provided in Paragraphs 16 through 19 below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the independent compliance monitorship set forth in Attachment D for an equivalent period. Conversely, in the event the Offices find, in their sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the monitorship in Attachment D, and that the other provisions of this Agreement have been satisfied, the Term of the Agreement may be terminated early. If the Court rejects the Agreement, all the provisions of the Agreement shall be deemed null and void, and the Term shall be deemed to have not begun.

## RELEVANT CONSIDERATIONS

4.     The Offices enter into this Agreement based on the individual facts and circumstances presented by this case, including:

a.     The Company did not voluntarily self-disclose the offense conduct to the Offices, and as a result the Company was not eligible for a more significant discount on the fine amount or the form of resolution;

b.     The Company received credit, in addition to the two-point downward adjustment to the Sentencing Guidelines, of 20 percent off of the bottom of the Sentencing Guidelines range for its cooperation with the Offices' investigation, including its Audit

3

Committee's very thorough and comprehensive internal investigation through counsel which included regular reports to the Offices, Company counsel's collection and production of voluminous evidence located in foreign countries, and efforts to make current and former employees available for interviews. The Company did not receive additional credit because of issues that resulted in a delay to the early stages of the investigation, including failures to produce important, responsive documents on a timely basis, and in some instances producing documents only after the Offices flagged for the Company that the documents existed and should be produced, and providing documents to other defense counsel prior to their production to the government;

        c.      By the conclusion of the investigation, the Company had provided to the Offices all relevant facts known to it, including information about individuals involved in the offense conduct;

        d.      The Company engaged in significant remediation to improve is compliance program and internal controls, and the Company has committed to continue to enhance its compliance program and internal controls, including ensuring that they satisfy the minimum elements of the corporate compliance program set forth in Attachment C to this Agreement;

        e.      In addition to the Company's remedial efforts, the Company has agreed to the imposition of an independent compliance monitor to prevent the reoccurrence of the misconduct;

4

f.      The seriousness of the offense conduct including the high-dollar amount of bribes paid to foreign officials, conduct in multiple, high-risk jurisdictions, and the fact that the bribery occurred at a high level within the Company;

g.      The Company has no prior criminal history; and

h.      The Company has committed to continuing to cooperate with the Offices as described in Paragraph 5 below.

## FUTURE COOPERATION AND DISCLOSURE REQUIREMENTS

5.      The Company shall cooperate fully with the Offices in any and all matters relating to the conduct described in this Agreement and the Statement of Facts, and any individual or entity referred to therein, as well as other conduct related to corrupt payments, false books, records, and accounts, the failure to implement adequate internal accounting controls, investment adviser fraud, wire fraud, obstruction of justice, and money laundering, subject to applicable law and regulations, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.  At the request of the Offices, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as the Multilateral Development Banks ("MDBs"), in any investigation of the Company, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to corrupt payments, false books, records, and accounts, and the failure to implement adequate internal accounting controls.  The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

a.      The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Offices may inquire.  This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Offices, upon request, any document, record or other tangible evidence about which the Offices may inquire of the Company;

b.      Upon request of the Offices, the Company shall designate knowledgeable employees, agents or attorneys to provide to the Offices the information and materials described in Paragraph 5(a) above on behalf of the Company.  It is further understood that the Company must at all times provide complete, truthful, and accurate information;

c.      The Company shall use its best efforts to make available for interviews or testimony, as requested by the Offices, present or former officers, directors, employees, agents and consultants of the Company.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation; and

d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Offices pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental

6

authorities, including United States authorities and those of a foreign government, as well as the MDBs, of such materials as the Offices, in their sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5 above, during the Term of the Agreement, should the Company learn of credible evidence or allegations of corrupt payments, false books, records, and accounts, and the failure to implement adequate internal accounting controls, the Company shall promptly report such evidence or allegations to the Offices.

<u>PAYMENT OF MONETARY PENALTY</u>

7.      The Offices and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

    a.      The 2015 USSG are applicable to this matter.

    b.      <u>Offense Level—Bribery Conduct (Highest Offense Level)</u>.  Based upon USSG § 2C1.1 and the absence of any increase in the offense level under § 3D1.4, the total offense level is 44, calculated as follows:

| | | |
|---|---|---|
| (a)(2)  Base Offense Level | | 12 |
| (b)(1)  Multiple Bribes | | +2 |
| (b)(2)  Value of benefit received more than $150,000,000 | | +26 |
| (b)(3)  High Level Official Involved | | +4 |
| **Total Offense Level** | | 44 |

    c.      <u>Base Fine</u>.  Based upon USSG § 8C2.4(a)(2), the base fine is $221,933,010 (the amount of pecuniary gain).

    d.      <u>Culpability Score</u>.  Based upon USSG § 8C2.5, the culpability score is 6, calculated as follows:

| | | |
|---|---|---|
| (a)      Base Culpability Score | | 5 |

7

(b)(3)  the organization had 200 or more employees and
an individual within high-level personnel of the
organization participated in, condoned, or was
willfully ignorant of the offense                                      +3

(g)(2)  The organization fully cooperated in the investigation and clearly
demonstrated recognition and affirmative acceptance of
responsibility for its criminal conduct                          - 2

## TOTAL                                                                          6

Calculation of Fine Range:

Base Fine                                    $221,933,010

Multipliers                                  1.2 (min)/ 2.4 (max)

Fine Range                                   $266,319,612 to
                                             $532,639,224

The Company, directly or through an affiliate, agrees to transfer the monetary penalty of

$213,055,689 into an escrow account within ten (10) days of the execution of this agreement for

the benefit of the United States Treasury. The monetary penalty in the amount of $213,055,689

shall be released from the escrow account to the United States Treasury within ten (10) days of

the entry of the judgment against OZ Africa Management GP, LLC, in connection with its guilty

plea, pursuant to a plea agreement, in the United States District Court for the Eastern District of

New York filed simultaneously herewith. The parties agree that any criminal fine that might be

imposed by the Court against OZ Africa Management GP, LLC, in connection with its guilty

plea and plea agreement, will be paid from the $213,055,689 monetary penalty held in the

escrow account and that any remaining balance will be transferred from the escrow account

within ten (10) days of entry of the judgment to the United States Treasury. The Company and

the Offices agree that the monetary penalty is appropriate given the facts and circumstances of

8

this case, including the factors described in Paragraph 4 above. The $213,055,689 monetary penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Offices that the $213,055,689 monetary penalty is the maximum penalty that may be imposed in any future prosecution, and the Offices are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Offices agree that under those circumstances, they will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of this $213,055,689 million monetary penalty. The Company shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement concerning the conduct set forth in the Statement of Facts entered into with an enforcement authority or regulator.

CONDITIONAL RELEASE FROM LIABILITY

8.    Subject to Paragraphs 16 through 19 below, the Offices agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company or any of its current or former wholly-owned subsidiaries relating to any of the conduct described in either the Statement of Facts or the criminal Information filed pursuant to this Agreement. This Agreement does not provide any protection against prosecution for any future conduct by the Company. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company. The Offices, however, may use any information related to the conduct described in the Statement of Facts against the Company:

9

a. in a prosecution for perjury or obstruction of justice;

b. in a prosecution for making a false statement;

c. in a prosecution or other proceeding relating to any crime of violence; or

d. in a prosecution or other proceeding relating to a violation of any

provision of Title 26 of the United States Code.

## CORPORATE COMPLIANCE PROGRAM

9. The Company represents that it has implemented and will continue to implement a compliance and ethics program throughout their operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with foreign officials or other activities carrying a high risk of corruption, designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws.

10. In order to address any deficiencies in its internal accounting controls, policies, and procedures, the Company represents that it has undertaken, and will continue to undertake in the future, in a manner consistent with all of its obligations under this Agreement, a review of its existing internal accounting controls, policies, and procedures regarding compliance with the FCPA and other applicable anti-corruption laws. If necessary and appropriate, the Company will adopt new or modify existing internal controls, policies, and procedures in order to ensure that the Company maintains: (a) a system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts; and (b) rigorous anti-corruption compliance code, standards, and procedures designed to detect and deter violations of the FCPA and other applicable anti-corruption laws. The internal accounting controls system

10

and compliance code, standards, and procedures will include, but not be limited to, the minimum elements set forth in Attachment C.

INDEPENDENT COMPLIANCE MONITOR

11.     Promptly after the Offices' selection pursuant to Paragraph 12 below, the Company agrees to retain a Monitor for the term specified in Paragraph 13 below. The Monitor's duties and authority, and the obligations of the Company with respect to the Monitor and the Offices, are set forth in Attachment D, which is incorporated by reference into this Agreement. Upon the execution of this Agreement, and after consultation with the Offices, the Company will propose to the Offices a pool of three (3) qualified candidates to serve as the Monitor. If the Offices determine, in their sole discretion, that any of the candidates are not, in fact, qualified to serve as the Monitor, or if the Offices, in their sole discretion, are not satisfied with the candidates proposed, the Offices reserve the right to seek additional nominations from the Company. The Monitor candidates or their team members shall have, at a minimum, the following qualifications:

a.     demonstrated expertise with respect to the FCPA and other applicable anti-corruption laws, including experience counseling on FCPA issues;

b.     experience designing and/or reviewing corporate compliance policies, procedures and internal controls, including FCPA and anti-corruption policies, procedures and internal controls;

c.     the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement; and

11

d.     sufficient independence from the Company to ensure effective and

impartial performance of the Monitor's duties as described in the Agreement.

12.     The Offices retain the right, in their sole discretion, to choose the Monitor from

among the candidates proposed by the Company, though the Company may express its

preference(s) among the candidates.  In the event the Offices reject all proposed Monitors, the

Company shall propose an additional three candidates within thirty (30) calendar days after

receiving notice of the rejection.  This process shall continue until a Monitor acceptable to both

parties is chosen.  The Offices and the Company will use their best efforts to complete the

selection process within sixty (60) calendar days of the filing of the Agreement and the

accompanying Information.  If the Monitor resigns or is otherwise unable to fulfill his or her

obligations as set out herein and in Attachment D, the Company shall within thirty (30) calendar

days recommend a pool of three qualified Monitor candidates from which the Offices will

choose a replacement.

13.     The Monitor's term shall be three (3) years from the date on which the Monitor is

retained by the Company, subject to extension or early termination as described in Paragraph 3

above. The Monitor's powers, duties, and responsibilities, as well as additional circumstances

that may support an extension of the Monitor's term, are set forth in Attachment D.  The

Company agrees that it will not employ or be affiliated with the Monitor or the Monitor's firm

for a period of at least two (2) years from the date on which the Monitor's term expires.  Nor will

the Company discuss with the Monitor or the Monitor's firm the possibility of further

employment or affiliation during the Monitor's term.

12

## DEFERRED PROSECUTION

14.     In consideration of the undertakings agreed to by the Company herein, the Offices agree that any prosecution of the Company for the conduct set forth in the Statement of Facts, and for the conduct that the Company disclosed to the Offices prior to the signing of this Agreement, be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company that the parties have specifically discussed and agreed is not covered by this Agreement, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

15.     The Offices further agree that if the Company fully complies with all of its obligations under this Agreement, the Offices will not continue the criminal prosecution against the Company described in Paragraph 1 above and, at the conclusion of the Term, this Agreement shall expire.  Within six (6) months of the Agreement's expiration, the Offices shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1 above, and agrees not to file charges in the future against the Company based on the conduct described in this Agreement and the Statement of Facts.

## BREACH OF THE AGREEMENT

16.     If, during the Term, the Company: (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in Paragraphs 5 and 6 of this Agreement; (d) fails to implement a compliance program as set forth in Paragraphs 9 and 10 of this Agreement and Attachment C; (e) commits any acts that, had they occurred within the jurisdictional reach of the

13

FCPA, would be a violation of the FCPA; or (f) otherwise fails specifically to perform or to fulfill completely each of the Company's obligations under the Agreement, regardless of whether the Offices become aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Offices have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1 above and charges that arise from the conduct set forth in the Statement of Facts, which may be pursued by the Offices in the United States District Court for the Eastern District of New York or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Offices' sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Offices prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Offices are made aware of the violation or the duration of the Term plus five years, and that this period

14

shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

17.     In the event the Offices determine that the Company has breached this Agreement, the Offices agree to provide the Company with written notice prior to instituting any prosecution resulting from such breach.  Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the Offices in writing to explain the nature and circumstances of the breach, as well as the actions the Company has taken to address and remediate the situation, which the Offices shall consider in determining whether to pursue prosecution of the Company.

18.     In the event that the Offices determine that the Company has breached this Agreement:  (a) all statements made by or on behalf of the Company to the Offices or to the Court, including the Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Offices against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will

15

be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Offices.

19.     The Company acknowledges that the Offices have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

20.     Thirty (30) days after the expiration of the period of deferred prosecution specified in this Agreement, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the Department that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

SALE, MERGER, OR OTHER CHANGE IN CORPORATE FORM OF COMPANY

21.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The Company shall obtain approval from the Offices at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form, including dissolution, in order to give the Offices an opportunity to determine if such change in corporate form would impact the terms or obligations of the Agreement.

PUBLIC STATEMENTS BY COMPANY

22.     The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the conduct described in the Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 16 through 19 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be

17

imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Offices.  If the Offices determine that a public statement by any such person contradicts in whole or in part the conduct described in the Statement of Facts, the Offices shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification.  The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts.  This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

23.    The Company agrees that if it, or any of its direct or indirect subsidiaries or affiliates, issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Offices to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Offices and the Company; and (b) whether the Offices have any objection to the release.

24.    The Offices agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation.  By agreeing to provide this information to such authorities, the

18

Offices are not agreeing to advocate on behalf of the Company, but rather are agreeing to provide facts to be evaluated independently by such authorities.

LIMITATIONS ON BINDING EFFECT OF AGREEMENT

25.    This Agreement is binding on the Company and the Offices but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Offices will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

NOTICE

26.    Any notice to the Offices under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Chief, FCPA Unit, Fraud Section, Criminal Division, United States Department of Justice, 1400 New York Avenue, Washington, D.C. 20530; Chief, Business and Securities Fraud Section, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201.  Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to David M. Becker, Esq., Chief Legal Officer, Och-Ziff Capital Management Group LLC, 9 West 57th Street, New York, New York 10019, with a copy to Mark K. Schonfeld, Esq., Gibson, Dunn & Crutcher LLP, 200 Park Ave, New York, New York 10166. Notice shall be effective upon actual receipt by the Offices or the Company.

19

## COMPLETE AGREEMENT

27.      This Agreement, including its attachments, sets forth all the terms of the

agreement between the Company and the Offices.  No amendments, modifications or additions

to this Agreement shall be valid unless they are in writing and signed by the Offices, the

attorneys for the Company and a duly authorized representative of the Company.

AGREED:

FOR OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC:


David M. Becker, Esq.                        Mark K. Schonfeld, Esq.
Chief Legal Officer                          Joel M. Cohen, Esq.
Och-Ziff Capital Management Group LLC        Lee G. Dunst, Esq.
                                             F. Joseph Warin, Esq.
                                             Gibson Dunn & Crutcher LLP
                                             Counsel to the Company


Date: September 29, 2016


FOR THE U.S. DEPARTMENT OF JUSTICE:


ROBERT CAPERS                                SANDRA MOSER
United States Attorney                       Principal Deputy Chief
Eastern District of New York                 Criminal Division, Fraud Section
                                             U.S. Department of Justice


James P. Loonam                              Leo R. Tsao, Assistant Chief
Jonathan P. Lax                              James P. McDonald, Trial Attorney
David Pitluck
Assistant U.S. Attorneys

Date:  9/29/16

20

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Och-Ziff Capital Management Group LLC (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Chief Legal Officer of the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: _September 29, 2016_

OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC

By: _David M. Becker_

David M. Becker, Esq.
Chief Legal Officer

21

## CERTIFICATE OF COUNSEL

I am counsel for Och-Ziff Capital Management Group LLC (the "Company") in the matter covered by this Agreement.  In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.  Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Chief Legal Officer of the Company.  I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: _9/29/16_

By: _____
Mark K. Schonfeld Esq.
Joel M. Cohen, Esq.
Lee G. Dunst, Esq.
F. Joseph Warin, Esq.
Gibson Dunn & Crutcher LLP
Counsel for Och-Ziff Capital Management Group LLC

22