ATTACHMENT D

<u>INDEPENDENT COMPLIANCE MONITOR</u>

The duties and authority of the Independent Compliance Monitor (the "Monitor"), and the obligations of Och-Ziff Capital Management Group LLC (the "Company"), on behalf of itself and its subsidiaries and affiliates, with respect to the Monitor and the United States Department of Justice, Criminal Division Fraud Section and United States Attorney's Office for the Eastern District of New York (the "Offices"), are as described below:

1. The Company will retain the Monitor for a period of three (3) years (the "Term of the Monitorship"), unless the early termination provision of Paragraph 3 of the Deferred Prosecution Agreement (the "Agreement") is triggered.

*Monitor's Mandate*

2. The Monitor's primary responsibility is to assess and monitor the Company's compliance with the terms of the Agreement, including the Corporate Compliance Program in Attachment C, so as to specifically address and reduce the risk of any recurrence of the Company's misconduct. During the Term of the Monitorship, the Monitor will evaluate, in the manner set forth below, the effectiveness of the internal accounting controls, record-keeping, and financial reporting policies and procedures of the Company as they relate to the Company's current and ongoing compliance with the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, *et seq.*, and other applicable anti-corruption laws (collectively, the "anti-corruption laws") and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate"). This Mandate shall include an assessment of the Board of Directors' and senior management's commitment to, and effective implementation of, the corporate compliance program described in Attachment C of the Agreement.

*Company's Obligations*

3. The Company shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about the Company's compliance program in accordance with the principles set forth herein and applicable law, including applicable data protection and labor laws and regulations. To that end, the Company shall: facilitate the Monitor's access to the Company's documents and resources; not limit such access, except as provided in Paragraphs 5 and 6; and provide guidance on applicable local law (such as relevant data protection and labor laws). The Company shall provide the Monitor with access to all information, documents, records, facilities, and employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under the Agreement. The Company shall use its best efforts to provide the Monitor with access to the Company's former employees and its third-party vendors, agents, and consultants.

4. Any disclosure by the Company to the Monitor concerning corrupt payments, false books and records, and internal accounting control failures shall not relieve the Company of any otherwise applicable obligation to truthfully disclose such matters to the Offices, pursuant to the Agreement.

*Withholding Access*

5. The parties agree that no attorney-client relationship shall be formed between the Company and the Monitor. In the event that the Company seeks to withhold from the Monitor access to information, documents, records, facilities, or current or former employees of the Company that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where the Company reasonably believes production would otherwise be

inconsistent with applicable law, the Company shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

6.  If the matter cannot be resolved, at the request of the Monitor, the Company shall promptly provide written notice to the Monitor and the Offices. Such notice shall include a general description of the nature of the information, documents, records, facilities or current or former employees that are being withheld, as well as the legal basis for withholding access. The Offices may then consider whether to make a further request for access to such information, documents, records, facilities, or employees.

*Monitor's Coordination with the
Company and Review Methodology*

7.  In carrying out the Mandate, to the extent appropriate under the circumstances, the Monitor should coordinate with Company personnel, including in-house counsel, compliance personnel, and internal auditors, on an ongoing basis. The Monitor may rely on the product of the Company's processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of the Company, as well as the Company's internal resources (e.g., legal, compliance, and internal audit), which can assist the Monitor in carrying out the Mandate through increased efficiency and Company-specific expertise, provided that the Monitor has confidence in the quality of those resources.

8.  The Monitor's reviews should use a risk-based approach, and thus, the Monitor is not expected to conduct a comprehensive review of all business lines, all business activities, or all markets. In carrying out the Mandate, the Monitor should consider, for instance, risks presented by: (a) the countries and industries in which the Company operates; (b) current and future business opportunities and transactions; (c) current and potential business partners,

including third parties and joint ventures, and the business rationale for such relationships; (d) the Company's gifts, travel, and entertainment interactions with foreign officials; and (e) the Company's involvement with foreign officials, including the amount of foreign government regulation and oversight of the Company, such as licensing and permitting, and the Company's exposure to customs and immigration issues in conducting its business affairs.

9. In undertaking the reviews to carry out the Mandate, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including the Company's current anti-corruption policies and procedures; (b) on-site observation of selected systems and procedures of the Company at sample sites, including internal accounting controls, record-keeping, and internal audit procedures; (c) meetings with, and interviews of, relevant current and, where appropriate, former directors, officers, employees, business partners, agents, and other persons at mutually convenient times and places; and (d) analyses, studies, and testing of the Company's compliance program.

*Monitor's Written Work Plans*

10. To carry out the Mandate, during the Term of the Monitorship, the Monitor shall conduct an initial review and prepare an initial report, followed by at least two follow-up reviews and reports as described in Paragraphs 16 through 19 below. With respect to the initial report, after consultation with the Company and the Offices, the Monitor shall prepare the first written work plan within thirty (30) calendar days of being retained, and the Company and the Offices shall provide comments within thirty (30) calendar days after receipt of the written work plan. With respect to each follow-up report, after consultation with the Company and the Offices, the Monitor shall prepare a written work plan at least thirty (30) calendar days prior to commencing a review, and the Company and the Offices shall provide comments within twenty (20) calendar

days after receipt of the written work plan. Any disputes between the Company and the Monitor with respect to any written work plan shall be decided by the Offices in their sole discretion.

11. All written work plans shall identify with reasonable specificity the activities the Monitor plans to undertake in execution of the Mandate, including a written request for documents. The Monitor's work plan for the initial review shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the Mandate, including by developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of the Agreement. In developing such understanding the Monitor is to rely to the extent possible on available information and documents provided by the Company. It is not intended that the Monitor will conduct his or her own inquiry into the historical events that gave rise to the Agreement.

*Initial Review*

12. The initial review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by the Company, the Monitor, and the Offices). The Monitor shall issue a written report within one hundred twenty (120) calendar days of commencing the initial review, setting forth the Monitor's assessment and, if necessary, making recommendations reasonably designed to improve the effectiveness of the Company's program for ensuring compliance with the anti-corruption laws. The Monitor should consult with the Company concerning his or her findings and recommendations on an ongoing basis and should consider the Company's comments and input to the extent the Monitor deems appropriate. The Monitor may also choose to share a draft of his or her reports with the Company prior to finalizing them. The Monitor's reports need not recite

or describe comprehensively the Company's history or compliance policies, procedures and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations, if any, for improvement or which the Monitor otherwise concludes merit particular attention. The Monitor shall provide the report to the Board of Directors of the Company and contemporaneously transmit copies to the Chief – FCPA Unit, Fraud Section, Criminal Division, United States Department of Justice, at 1400 New York Avenue N.W., Bond Building, Eleventh Floor, Washington, D.C. 20005 and Chief, Business and Securities Fraud Section, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201. After consultation with the Company, the Monitor may extend the time period for issuance of the initial report for a brief period of time with prior written approval of the Offices.

13. Within one hundred and twenty (120) calendar days after receiving the Monitor's initial report, the Company shall adopt and implement all recommendations in the report, unless, within sixty (60) calendar days of receiving the report, the Company notifies in writing the Monitor and the Offices of any recommendations that the Company considers unduly burdensome, inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable. With respect to any such recommendation, the Company need not adopt that recommendation within the one hundred and twenty (120) days of receiving the report but shall propose in writing to the Monitor and the Offices an alternative policy, procedure or system designed to achieve the same objective or purpose. As to any recommendation on which the Company and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within forty-five (45) calendar days after the Company serves the written notice.

14. In the event the Company and the Monitor are unable to agree on an acceptable alternative proposal, the Company shall promptly consult with the Offices. The Offices may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations under the Agreement. Pending such determination, the Company shall not be required to implement any contested recommendation(s).

15. With respect to any recommendation that the Monitor determines cannot reasonably be implemented within one hundred and twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Offices.

*Follow-Up Reviews*

16. A follow-up review shall commence no later than one hundred-twenty (120) calendar days after the issuance of the initial report (unless otherwise agreed by the Company, the Monitor and the Offices). The Monitor shall issue a written follow-up report within ninety (90) calendar days of commencing the follow-up review, setting forth the Monitor's assessment and, if necessary, making recommendations in the same fashion as set forth in Paragraph 12 with respect to the initial review. After consultation with the Company, the Monitor may extend the time period for issuance of the follow-up report for a brief period of time with prior written approval of the Offices.

17. Within ninety (90) calendar days after receiving the Monitor's follow-up report, the Company shall adopt and implement all recommendations in the report, unless, within thirty (30) calendar days after receiving the report, the Company notifies in writing the Monitor and the Offices concerning any recommendations that the Company considers unduly burdensome,

inconsistent with applicable law or regulation, impractical, excessively expensive, or otherwise inadvisable. With respect to any such recommendation, the Company need not adopt that recommendation within the ninety (90) calendar days of receiving the report but shall propose in writing to the Monitor and the Offices an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which the Company and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after the Company serves the written notice.

18.  In the event the Company and the Monitor are unable to agree on an acceptable alternative proposal, the Company shall promptly consult with the Offices. The Offices may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether the Company has fully complied with its obligations under the Agreement. Pending such determination, the Company shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Offices.

19.  The Monitor shall undertake a second follow-up review pursuant to the same procedures described in Paragraphs 16 through 18. Following the second follow-up review, the Monitor shall certify whether the Company's compliance program, including its policies and procedures, is reasonably designed and implemented to prevent and detect violations of the anti-corruption laws. The final follow-up review and report shall be completed and delivered to the Offices no later than thirty (30) days before the end of the Term.

*Monitor's Discovery of Misconduct*

20. Should the Monitor, during the course of his or her engagement, discover that: (a) improper payments or anything of value may have been offered, promised, made, or authorized by any entity or person within the Company or any entity or person working, directly or indirectly, for or on behalf of the Company; (b) the Company may have maintained false books, records or accounts; or (c) the Company may have failed to implement a system of internal accounting controls that is sufficient to accurately record the Company's transactions (collectively "Misconduct"); then except as set forth below, the Monitor must immediately report Misconduct to the Company's General Counsel, Chief Compliance Officer, and Audit Committee for further action, unless the Misconduct was already so disclosed. If the Monitor believes that any Misconduct did actually occur or may constitute a violation of law, the Monitor must immediately report the Offices. When the Monitor in his or her discretion believes that disclosure to the Company would be inappropriate under the circumstances, the Monitor should disclose the Misconduct solely to the Offices, and, in such cases, disclosure of the Misconduct to the General Counsel, Chief Compliance Officer, and/or the Audit Committee of the Company should occur as promptly and completely as the Offices and the Monitor deem appropriate under the circumstances. The Monitor shall address in his or her reports the appropriateness of the Company's response to disclosed Misconduct, whether previously disclosed to the Offices or not. Further, in the event that the Company, or any entity or person working directly or indirectly for or on behalf of the Company, withholds information necessary for the performance of the Monitor's responsibilities, if the Monitor believes that such withholding is without just cause, the Monitor shall disclose that fact to the Offices. The Company shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason. The Monitor

shall report criminal or regulatory violations by the Company or any other entity discovered in the course of performing his or her duties, in the same manner as described above.

*Meetings During Pendency of Monitorship*

21. The Monitor shall meet with the Offices within thirty (30) calendar days after providing each report to the Offices to discuss the report, to be followed by a meeting between the Offices, the Monitor, and the Company.

22. At least annually, and more frequently if appropriate, representatives from the Company and the Offices will meet together to discuss the monitorship and any suggestions, comments, or improvements the Company may wish to discuss with or propose to the Offices, including with respect to the scope or costs of the monitorship.

*Contemplated Confidentiality of Monitor's Reports*

23. The reports will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, or impede pending or potential government investigations and thus undermine the objectives of the monitorship. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the Offices determine in their sole discretion that disclosure would be in furtherance of the Offices' discharge of their duties and responsibilities or is otherwise required by law.